In the Matter of ARTHUR J. GENTILE, Petitioner, *v.* JOHN R. NIESLEY et al., Constituting the Civil Service Commission of the County of Nassau, et al., Respondents.

Supreme Court, Special Term, Nassau County, July 3, 1962.

*Harold L. Herzstein* for petitioner. *Bertram Harnett, County Attorney,* for respondents.

FRANK A. GULOTTA, J. This is an article 78 proceeding in which the petitioner seeks to raise the mark of 61.75% which he received on a promotional examination taken by two people for the position of principal construction inspector in the Planning Commission.

The papers are in a confused state in which questions are broken up into parts which do not coincide with their divisions on the examination itself and questions not appealed from are discussed by both the petitioner and the specialists hired by the respondents to prepare and grade the examination.

Confining ourselves to the matters appealed from, first to the commission and now to this court, and taking them up in order:

ITEM " C " of Question 1 as subdivided for grading purposes, deals with offsets to the budget. There appears to be only one offset, to wit, the 1% fee received from the developer (even the specialist seems to be unclear whether this is computed on the amount of subdivision contracts or on the amount of the bond). In any event, taking away one half the credit for the question because of petitioner's mistake in arithmetic seems unduly harsh.

ITEM " D " deals with benefits of the program, i.e., the inspection system for roads, drainage work, etc. in new subdivisions. The candidate made the essential point that doing the work right in the first place saves money, because after the builder is released from the bond, it becomes a general county responsibility. This makes a lot more sense than dividing the taxpayers into two artificial groups, those who buy in the subdivision and those who do not. If the roads are inadequately based, or drainage is unprovided for, all taxpayers will suffer dollarwise although the buyers in the development may suffer some immediate inconvenience as well.

For his answer petitioner received no credit, apparently because he failed to discuss a point which the examiner had in mind, which is in nowise suggested by the question.

Question 2 involves a semantic discussion as to whether " checking " an inspector's abilities is different from " evaluating " them. This would seem a slim ground on which to deny him any credit whatever out of the eight points assigned to subdivision A.

Question 3 deals with possible corruption among subordinate inspectors. Petitioner seems to have been denied any credit on subdivision A (10 points) because of a failure to advocate active gumshoe work on the part of the chief inspector, e.g., ascertaining how the inspector conducts himself off the job, if he lives within his means, etc. This would certainly be extraordinary behavior for a Chief Inspector to adopt as a routine matter. It sounds

more like the conduct to be expected of an Investigation Commissioner.

While it is true that in matters such as this the court looks for error, rather than mere difference of opinion (*Connaughton v. Taylor*, 135 N. Y. S. 2d 3, affd. 285 App. Div. 1169, affd. 1 N Y 2d 864) and while it is also true that this is more easily demonstrated in true/false or multiple choice types of questions, essay examinations are not immune to all review.

Enough has been shown I think to indicate that this matter should be reconsidered by the respondents in the light of this opinion, and the matter is returned to them for reconsideration and regrading.